

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable I. Predecki
County Auditor
Galveston County
Galveston, Texas

Dear Sir:

This Opinion
Overrules Opinion
# ~~6032~~ O-5413

In so far as it conflicts

Opinion No. O-6032
Re: Constitutionality of H.B.
990, Acts of the 47th Leg-
islature, 1941; proper
fund to be used by Gal-
veston County in paying
preliminary engineering
expenses in connection
with proposed Galveston-
Bolivar Tunnel; and relat-
ed question.

Your letter to us requesting our opinion on the
above captioned subject, reads in part as follows:

"At a special session of the County Commis-
sioners' Court held on April 10th, 1939, an
agreement was entered into by the Court with
the firm of Wilberding and Palmer, Inc., consult-
ing engineers, in connection with the financing
and engineering of a proposed Galveston-Bolivar
Tunnel. This agreement provided for the under-
taking within a period of three years from the
date thereof. A renewal of the agreement was
ratified at a regular meeting of the Commission-
ers' Court held on April 13th, 1941, and when
this agreement expired it was again renewed for a
period of 90 days on April 10th, 1944, at a meet-
ing of the Commissioners' Court held on that date.

". . .."

"H. B. 990, Acts of the 47th Legislature,
which is Article 6795-B of the Revised Civil Stat-
utes, authorizes construction of a structure which

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable I. Predecki, page 2

the engineering firm referred to proposed to furnish plans and specifications for.

"Section 1 of said Article refers to the authorization and issuance of revenue bonds as well as the payment of preliminary expenses by the County from its 'general funds' and also provides for the repayment to such funds from the proceeds of the bonds when available.

"The various funds that Galveston County has at this time were levied for specific purposes and in none of said tax levies was contemplated the expenditures now proposed for engineering services in connection with the tunnel. In section 2 of said Article, the words 'general funds' are used, and as this article is a part of Title 116, Roads, Bridges, and Ferries, it occurs to me that if it is legal to advance any funds, that said funds should come from tax levies in connection with roads, bridges, and ferries.

"Your opinion is respectfully requested on the following:

"Is Article 6795-B a legal and constitutional act?

"Since the County is prohibited from transferring constitutional funds, what funds can be used to pay the sum of $50,000.00 this year and $50,000.00 in the year 1945, and the statement is made by the Engineers that the Federal Government through the State Highway Department will match the $100,000.00 that is requested from the County.

"Should your opinion on the above be in the negative, is the County authorized to have a bond election for the purpose of issuing bonds in the sum of $100,000.00 as its share of the preliminary engineering expenses?

". . . ."

Honorable I. Predecki, page 3

We have carefully studied H. B. 990, and have been unable to find any provisions thereof which in our opinion are in violation of the Constitution. We have particularly considered said act in conjunction with Section 56 of Article 3, Section 9 of Article 8, Section 18 of Article 5 and Section 7 of Article 2 of our State Constitution and have reached the conclusion that your first question should be answered in the affirmative.

The Act itself provides that the cost of the project shall be considered to include the cost of construction, the cost of all property, et cetera, and "shall include the payment of all legal, fiscal and engineering expenses incurred in connection with the acquisition and construction of the project and the making of preliminary surveys and investigations and the authorization and issuance of the revenue bonds." It is further provided in the Act that any preliminary expenses paid by the county from its general funds shall be repaid to the county from the proceeds of the bonds when available.

It may be seen, therefore, that Galveston County is to finance the preliminary work and will be reimbursed for that expense from the proceeds of the bonds in the event the revenue bonds are actually issued and sold.. Does this constitute a lending of the assets of the county, in violation of our State Constitution? We think not. In the first place, there can be no question but that this preliminary expense is for "county purposes." See Aransas County vs. Coleman-Fulton Pasture Company, 191 S. W. 553; Galveston County vs. Gresham, 220 S. W. 560; Hidalgo County Water Improvement District No. 2 vs. Feick, 111 S. W. (2d) 742.

The Legislature could have provided in said Act for the county to pay this preliminary expense without making provisions for its repayment, as the projects provided for therein are for "county purposes." The mere fact that the Legislature provided for the county's repayment does not make the transaction a "lending," as the Legislature evidently knew that if the financing of the project fails, that the bonds would not be issued and the payment by the county of the preliminary expenses would not be repaid.

For an illustration of the principle involved, we cite the following: A owns a farm adjoining B. A desires to

Honorable I. Predecki, page 4

build a fence around his land so as to keep his cattle confined therein. B tells A that if A will build such fence and pay for the same that in the event that he (B) is elected to the office of pound keeper that he will repay A for such expenditures. A built the fence under said agreement. Did A lend money to B? The question answers itself. The fence belonged to A and was erected for A's benefit and A's purpose. The preliminary expenses are for county purposes and is paid out for the benefit of the county and the mere fact that upon the happening of a future contingency that such money would be refunded to the county would not make the paying for such preliminary expenses a lending of money. The Supreme Court of Tennessee in the case of State ex.rel. Bigham, et al., vs. Powers, reported in 137 S. W. 1110, had the same question before it and held that the payment by the county of the preliminary expenses incurred in connection with the proposed formation of a drainage district, although the amount so expended would be refunded to the county out of the assessments collected from the lands of such district when so collected was not in violation of the constitutional provisions of Tennessee, which has a like provision as our State Constitution, as to lending of credit, et cetera. This court in the course of its opinion used the following language:

"We do not think that this makes out a case of lending the credit of the county in the constitutional sense, but that it is rather the conferring of authority upon the counties to appropriate a portion of their general funds for a newly sanctioned county purpose."

All county expenditures lawfully authorized to be made by a county must be paid out of the county's general fund unless there is some law which makes them a charge against a special fund. Bexar County vs. Mann, 157 S. W. (2d) 134; Williams vs. Carroll, 182 S. W. 29.

The only special fund, besides the general fund, that it could even be contended could be used in paying for these preliminary expenses, is the Road and Bridge Fund. So if we reach the conclusion that the Road and Bridge Fund cannot be used to pay these preliminary expenses, we have your second question answered.

The first question that arises is whether or not a tunnel is a "road" or a "bridge" as those terms are used in

Honorable I. Predecki, page 5

Section 9 of Article 8 of our Constitutbn.

We do not believe that it could be seriously contended that a tunnel is a bridge. Is it a road? Webster's New International Dictionary defines a tunnel as follows:

"A subterranean passageway, esp. one nearly horizontal and open at both ends, as to provide a path for a road, railroad, canal, and etc., or for a sewer or drain."

So we see that a tunnel is merely a subterranean passageway, "to provide a path for a road . . ." A road as defined by Webster's New International Dictionary is as follows:

"A place where one may ride; an open way or public passage for vehicles, persons, and animals; a track for travel or for conveying goods, etc., forming a means of communication between one place and another. Road is generally applied to a highway outside of an urban district, as distinct from a street which is a highway in an urban district."

We have carefully examined all the authorities cited in Words and Phrases, Corpus Juris and McQuillin on Municipal Corporations, construing tunnels, and the only case that we have been able to find in any jurisdiction, that is directly in point on this matter is the case of Thompson, et al., vs. Hance, City Treasurer, et al., reported in 163 Pac. 1021, in which the Supreme Court of California held that a tunnel is not a street. As stated by Webster in his definition of a road, a street is merely a road within the limits of a town or city.

A bridge is defined by Webster's New International Dictionary as follows:

"A structure erected over a depression or an obstacle, as over a river, chasm, roadway, railroad, etc., carrying a roadway for passengers, vehicles, et cetera."

Thus we see that a bridge is a structure carrying a roadway and that according to Webster, a roadway is part of the bridge,

Honorable I. Predecki, page 6

and by reason thereof a bridge comes nearer to being a road than does a tunnel. The framers of our Constitution in providing for Road and Bridge Funds, evidently did not use the term "roads" in a broad enough sense to include "bridges," or else they would have merely provided for a "road fund" instead of a "road and bridge fund." If the term "roads" as used in the Constitution was broad enough to include "bridges," the addition of the term "bridge" was surplusage and meaningless. Furthermore, we cannot believe that at the time the Constitution was written that the framers thereof ever contemplated or dreamed that a road as used therein would constitute a tunnel under the sea.

Section 9 of Article 8 of our Constitution, reads as follows:

"... and no county ... shall levy more than 25¢ for city or county purposes, and not exceeding 15¢ for roads and bridges, ; ..."

The fact that Section 9 (supra) in providing for the levy of not exceeding 15¢ on the $100.00 valuation for roads and bridges, does not read: roads, bridges and tunnels, leads to the inevitable conclusion that such special constitutional fund should only be expended for roads and bridges.

The Supreme Court of Texas in the case of Aransas County, et al., vs. Coleman-Fulton Pasture Company, et al., (supra), had under consideration for construction that portion of Section 52 of Article 3 of the Constitution, which reads as follows: "The construction, maintenance, and operation of macadamized, graveled or paved roads and turnpikes, or in aid thereof," and held that the sense in which the term "roads" is used in said Section of the Constitution, includes the term "bridges," but the court in the course of its opinion used the following significant language:

"In different provisions of the Constitution, namely, Section 56 of Article 3, Section 9 of Article 8, Section 2 of Article 11, and Section 24 of Article 16, roads and bridges are dealt with as distinct subjects. In Section 9 of Article 8, the construction of each is recognized as a distinct purpose of taxation. Inasmuch as the term 'roads'

Honorable I. Predecki, page 7

> is very plainly used in these sections in a spe-
> cific sense, it is urged by the defendants in
> error that the same restricted meaning should be
> given it in the construction of Section 52 of
> Article 3. Such was the view of the Court of
> Civil Appeals. There is force in the position
> as a general rule of construction. But the sense
> in which a term is used in other provisions of the
> Constitution is not a conclusive test of its mean-
> ing in a particular provision. The spirit, pur-
> pose and scope of the particular provision are
> all to be consulted in the effort to determine
> with certainty the meaning of its terms." (Under-
> scoring ours)

The Supreme Court in the above case clearly states
that the term "roads" as used in said Section 9 of Article 8,
is used in its strictest sense, and does not include bridges.
A fortiori "roads" as used in Section 9 does not include
tunnels.

Even though the term "roads" as used in said Sec-
tion 9 be broad enough to include a tunnel, we are of the
opinion that the expenditure for these preliminary expenses
should still be paid out of the general fund of the county.
It is true that the county is prohibited from transferring
money from one constitutional fund to another, but we think
this expenditure is certainly for general county purposes and
should properly be paid from the general fund, even though it
might be held that the actual cost of the construction of the
tunnel, if it were being paid for by the county from its funds
derived from the taxes, properly should be paid from the road
and bridge fund. All of the services heretofore performed
and to be performed, for which this payment is to be made, are
of a fiscal nature and are preliminary to the construction of
the project and has to be completed before it can be financed,
much less actual construction begun. In Words and Phrases, it
is stated that the term "preliminary" dealing with preliminary
expenses, means "that which precedes the main business."

In Attorney General's Opinion No. 0-781, it was
held that the expenses for holding a county-wide election for
the purpose of voting a $90,000.00 road bond issue, was pay-
able out of the general fund of the county. This election

Honorable I. Predecki, page 8

expense was merely preliminary expense, and was not payable out of the Road and Bridge Fund. It was merely "that which precedes the main business." The preliminary expense involved in the construction of the proposed tunnel is certainly for county purposes and "that which precedes the main business."

The Supreme Court in Bexar County vs. Mann, (supra), held that the holding of elections should be paid out of the general fund and made no exceptions where the election was for the purpose of voting county road bonds. The Court in the course of its opinion used the following language:

> "So far as is pertinent to this case, Section 9 of Article 8 of our State Constitution provides: '* * * no county * * * shall levy more than 25¢ for.* * * county purposes * * * on the $100.00 valuation, * ** .'

> "It is too evident to admit of debate that the holding or conducting of elections is a county purpose within the meaning of the above quoted constitutional provision."

We can see no distinction as a matter of law between the preliminary expense of holding an election for the purpose of voting county-wide road bonds and the expenses involved in the preliminary matters essential to be completed in order that revenue bonds may be issued for the purpose of constructing the proposed tunnel. There can be no question but what constitutional funds can only be used for the purposes for which the tax levy was made. The Road and Bridge Fund can only be used for the construction of roads and bridges. In the event that the proposed project is not financed and revenue bonds not issued, no road or bridge (if a tunnel is a road or bridge) will be built and certainly the preliminary matters, such as taking cores of formations; making traffic investigations to establish the soundness of the project; preparing necessary preliminary design drawings; preparing drawings and applications to be filed with the United States Engineers; securing necessary permits from the United States Engineers to build such project; preparing preliminary drawings and preparing easements to secure the approval of the United States Army to permit the passage across the San Jacinto Reservation; securing the passage of proper legislation permitting and authorizing the construction of the project and the procuring of investment bankers who are able and willing to assume

Honorable I. Predecki, page 9

the financing of the cost of the project; the securing of
necessary Federal or State permits, easements, rights-of-
way, leases, commitments for insurances; the making of sur-
veys, soundings, driving of test pilings; preparation of
working drawings; making all specifications; making of large
scale and full sized detailed drawings; preparation of ap-
plications for Federal or State funds; drafting of forms of
proposals and constructions and the preparation of the esti-
mates of quantities and costs, cannot be considered as the
building of a road or a bridge.

It is therefore our opinion that the commissioners'
court of Galveston County may authorize the payment of the
preliminary engineering expenses in connection with the pro-
posed Galveston-Bolivar Tunnel out of the General Fund.

Our prior Opinion No. 0-543, dated April 4, 1939,
in so far as same is in conflict herewith, is hereby express-
ly overruled.

In view of our answers to the above questions, we
do not believe it necessary to answer your third question.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By W. V. Geppert

W. V. Geppert
Assistant

And Jack W. Rowland

Jack W. Rowland
Assistant

APPROVED JUN 17, 1944

ATTORNEY GENERAL OF TEXAS

WVG:db